AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C #336
Alameda, CA 94501
Telephone:  510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
PAMELA BALL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA BALL<br><br>    Plaintiff,<br><br>v.<br><br><br>KPC HEALTHCARE, INC.;<br>ORANGE COUNTY GLOBAL<br>MEDICAL CENTER, INC.<br><br><br>    Defendants. | CASE NO. 8:25-cv-00306<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:**<br><br>1.  **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2.  **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3.  **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

1.    **PREFETORY STATEMENT:** This is Plaintiff's third Americans with Disabilities Act ("ADA") lawsuit in her lifetime. It does not involve any architectural barriers, only service dog denial claims. Plaintiff is not a high frequency litigant pursuant to California state law. Similarly, Plaintiff's law firm is not a high frequency litigation firm, and does not represent any high frequency litigants. Clefton Disability Law represents many different disabled plaintiffs, none

of whom are high frequency litigants as defined by state law,.  Plaintiff PAMELA BALL complains of Defendants KPC HEALTHCARE, INC.; ORANGE COUNTY GLOBAL MEDICAL CENTER, INC. and alleges as follows:

2.   **INTRODUCTION:**  Around 4:30 am on December 27, 2024, Plaintiff received a phone call from her daughter Alyssa who left a voicemail. Alyssa informed Plaintiff that she was having difficulty breathing, and she was in the emergency room at Orange County Global Medical Center located at 1001 N. Tustin Ave, Santa Ana, California 92705.  Plaintiff's daughter told her mother that she was very frightened and wanted her to come to the hospital to be with her. Plaintiff knew she had to get to the hospital as soon as she could.

3.   Plaintiff and her service dog Mason left their home and drove to Orange County Global Medical Center.  When they arrived, Plaintiff and Mason entered the ER and approached the check-in counter.  Plaintiff asked the staff member for an update about Alyssa and asked to see her.  Defendants' employee told Plaintiff that dogs were not allowed in the ER.  Plaintiff informed Defendants' employee that Mason is a service dog.  Defendants' employee told Plaintiff that a shift change of hospital staff was imminent and informed Plaintiff that she would have to wait until the new staff was settled before she would be able to see her daughter.

4.   Plaintiff waited as patiently as possible, but no one would allow her to see her daughter or give her any information about her condition.  After waiting for almost an hour and half, Plaintiff again approached the check-in counter to inquire again about seeing her daughter. Defendants' employee behind the counter told Plaintiff that she would not be allowed to enter the ER (beyond the waiting room) to see her daughter with her service dog.  Plaintiff was surprised and asked Defendants' employee why.  Defendants' employee told Plaintiff that her daughter was being treated in a hallway because there were no rooms available, and Defendants do not allow service dogs to accompany visitors who were visiting

1 patients.

2      5.    Ultimately, Plaintiff's daughter left Defendants' ER to be treated at

3 another hospital.  However, while Alyssa was being treated at Orange County

4 Global Medical Center, Defendants refused to allow Plaintiff to see her daughter

5 due to the presence of her service dog.  Plaintiff was denied equal service by

6 Defendants because she needs her service dog to equally enjoy the premises

7 compared with non-disabled persons. Plaintiff was devastated by her interactions

8 with Defendants.  She was worried about her daughter, and Defendants refused to

9 allow her to see Alyssa.

10      6.    Defendants' decision to bar Plaintiff from accompanying her daughter

11 in the ER because of her service dog contravenes the ADA's mandate to allow

12 disabled persons equal enjoyment of the facility and the Department of Justice's

13 technical assistance and guidance on the subject of "Service Animals."  In relevant

14 part, the guidance states:

15    • A person with a disability cannot be asked to remove his service

16      animal from the premises unless: (1) the dog is out of control and the

17      handler does not take effective action to control it or (2) the dog is not

18      housebroken. When there is a legitimate reason to ask that a service

19      animal be removed, staff must offer the person with the disability the

20      opportunity to obtain goods or services without the animal's presence**.**

21 DOJ 2010 "Service Animal" guidance available at

22 https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis

23 added). Further,

24     **Under the ADA, State and local governments, businesses, and**

25     **nonprofit organizations that serve the public generally must allow**

26     **service animals to accompany people with disabilities in all areas of**

27     **the facility where the public is allowed to go.** For example, in a

28     hospital it usually would be inappropriate to exclude a service animal

from areas such as patient rooms, clinics, cafeterias, or examination rooms. However, it may be appropriate to exclude a service animal from operating rooms or burn units where the animal's presence may compromise a sterile environment.

*Id.* (emphasis in original).

7.     On December 27, 2024, Defendants refused to allow Plaintiff to visit her daughter in the ER due to the presence of her task trained service dog despite that her service dog was under her control, task trained, and is housebroken. Further, Defendants did not cite either of those as reasons for refusing service to Plaintiff.  Defendants simply told Plaintiff that she would not be allowed to see her daughter in the ER because they do not allow service dogs to accompany visitors beyond the waiting room in the ER.

8.     Plaintiff may have the need to accompany her daughter to the ER in the future.  However, she cannot do so until the policies of the Hospital are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training.  Plaintiff has brought this lawsuit to force Defendants to change their discriminatory and illegal policies and compensate her for refusing to serve her because she is a disabled person who needs the assistance of her qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at Orange County Global Medical Center.

9.     **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

10.    **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this

4

district.

11.    **INTRADISTRICT:**  This case should be assigned to the Southern Division because the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

12.    **PARTIES:**  Plaintiff Pamela Ball is a "qualified" disabled person who uses the assistance of a service dog to ameliorate her disability.  Plaintiff suffers from an irregular heartbeat which can cause her blood pressure to drop to dangerously low levels.  When her blood pressure drops, she can faint and fall down unless she takes immediate action to raise her blood pressure or at the very least get herself to a safe place.  Plaintiff's disability affects her abilities to walk, stand and think clearly.

13.    Plaintiff relies upon her service dog, a Maltipoo named "Mason" to assist her with certain tasks including alerting her to any decrease in her blood pressure so that she can sit down, put her head between her legs, drink water to hydrate herself before her blood pressure drops to dangerous levels, and take medication if necessary.  In order to alert Plaintiff, Mason is trained to lick Plaintiff's calf to alert, then stand on his hind legs and put his front paws on Plaintiff's knee until Plaintiff takes action to raise her blood pressure.

14.    Plaintiff trained Mason to perform this task herself.  She researched online regarding the training of service dogs, and then she trained him over the course of many months.  She would do so by bringing him close to her whenever she was experiencing symptoms of low blood pressure so that he could see and feel her reactions.  Then, Plaintiff would point to her calf to indicate that Mason should lick her and then gesture for him to put is front paws on her knee.  Whenever he did the task, she would reward him with treats and praise.  Mason and Plaintiff have been working together for over two years.  Plaintiff continues to reinforce the training with Mason daily.  Below is a photo Plaintiff and Mason with a vest.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15        15.    Plaintiff is a qualified person with a disability as defined under federal

16    and state law who is substantially limited in the major life activities of walking,

17    standing, and thinking clearly.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and

18    California Government Code § 12926(1).

19        16.    Defendants KPC HEALTHCARE, INC.; ORANGE COUNTY

20    GLOBAL MEDICAL CENTER, INC., are and were at all times relevant to this

21    Complaint the owners, operators, lessors and/or lessees of the subject business

22    located at 1001 N. Tustin Ave, Santa Ana, California 92705, known as the Orange

23    County Global Medical Center ("Hospital").  Plaintiff is informed and believes that

24    each of the Defendants herein is the agent, employee or representative of each of

25    the other Defendants, and performed all acts and omissions stated herein within the

26    scope of such agency or employment or representative capacity and is responsible

27    in some manner for the acts and omissions of the other Defendants in proximately

28    causing the damages complained of herein.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

17.    The Hospital is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of the categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

18.    **FACTUAL STATEMENT:**  Plaintiff Pamela Ball has been working with her service dog Mason for approximately two and a half years.  Mason is a Maltipoo who was individually trained by Plaintiff to be a service dog.  Plaintiff has also continued to train Mason to serve her specific needs throughout their relationship.  Mason is specifically trained to assist Plaintiff by alerting her to changes in her heart rate and blood pressure so that she can get herself to a safe place in a sitting position in a safe place before her blood pressure drops to dangerous levels.  Prior to working with Mason, Plaintiff was hospitalized several times due to her blood pressure dropping to low.  However, she has not been hospitalized since working with Mason because he is able to alert her before she realizes her blood pressure is dropping, and Plaintiff can take certain steps to raise her blood pressure before it drops too low.

19.    Mason is a working dog; he is not a pet.  Mason usually wears a vest identifying him as a service dog. Plaintiff and Mason have trained extensively together, and they supplement that training daily.  Plaintiff takes Mason everywhere with her in public.  It is important they stay together as much as possible because (a) Mason provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff goes, Mason goes.

20.    On December 27, 2024, Plaintiff's daughter Alyssa went to the emergency room due to shortness of breath.  She called her mother at 4:30 a.m. telling Plaintiff that she could not breath, and that she was in Defendant's Emergency Room. Alyssa told Plaintiff that she was scared and asked her to come to meet her in the ER as soon as possible.

21.    Scared and worried, Plaintiff immediately took her service dog Mason with her to see her daughter.  She walked into the waiting room and went up to the counter to ask about her daughter. Plaintiff has been denied entry to public places unlawfully in the past.  She did not want to delay seeing her daughter so she volunteered to the hospital intake staff that Mason is a service dog.

22.    Staff responded that the hospital nurses and doctors were having a shift change so she could not see her daughter. Staff made no objections to Plaintiff waiting in the ER waiting area with her service dog.  However, Plaintiff waited over an hour but was still not called back to see her daughter.

23.    Plaintiff returned to the counter and asked if the shift change was still going on, and informed staff that she really needed to see her daughter.

24.    Staff then told her that they could not let her back to see her daughter with her service animal.  Plaintiff asked what they meant by this. The staff said that her daughter was in a hallway not a room so she could not see her daughter with her service dog. Meanwhile other people who did not have service dogs had been allowed into the ER to see their family members.

25.    Upset, Plaintiff asked, "How can I know what's happening with my kid?" Staff said they would send out a doctor.

26.    The doctor arrived and in an elevated voice nearly shouted, "are you Alyssa Ball's mother?" Plaintiff said she was. The doctor then started loudly discussing Alyssa medical condition in the public waiting room, violating HIPPA regulations in front of a lobby full of people. Plaintiff asked if there was a place that they could speak privately because she felt that everyone was watching and could hear the conversation. The doctor said, "where would you want to go?" Plaintiff repeated that she preferred to discuss the matter privately, and asked whether he knew if there was somewhere private they could go to discuss her daughter's medical condition. The doctor replied curtly, "do you want the info or not?" Plaintiff said she did but again asked to discuss it in a private area. The doctor left

1    without providing Plaintiff an update on Alyssa's condition.

2       27.    Plaintiff went back to the front desk to ask if she could go be with her

3    daughter because the doctor had not given her information. The staff again said that

4    she could not take her service dog with her into the ER itself, only the waiting

5    room.

6       28.    Upset and still worried about her daughter, Plaintiff intended to

7    escalate the issue to someone with decision making authority inside the hospital

8    who could help her. She left and went to her car. She started making phone calls to

9    the hospital to speak with someone about who could let her into the ER with her

10   service dog. She was repeatedly transferred to people who were not in the office, so

11   she could only leave a voicemail.

12      29.    After some additional time had passed, Plaintiff suddenly saw Alyssa

13   walking out to the parking lot, wrapped in a blanket. Plaintiff approached her, and

14   Alyssa went to the back seat of her car. Alyssa said, "I can't breathe."

15      30.    Plaintiff asked why she was being discharged. Alyssa did not know.

16   Plaintiff received a call from the hospital saying that Alyssa had eloped from the

17   hospital. Staff informed Plaintiff that they needed their I.V. equipment back and

18   that they would call the police if Alyssa did not return it. Plaintiff took Alyssa back

19   to the ER entrance, and staff came out to parking lot and removed the I.V.  As a

20   result of Defendant's discriminatory actions toward Plaintiff, she was unable to be

21   with her daughter, directly resulting in Alyssa eloping from the hospital. Alyssa

22   went to another hospital to receive medical care.

23      31.    On or about January 9, 2025, Plaintiff learned from her investigator

24   that her experience at Orange County Global Medical Center was not an isolated

25   incident.  The investigator, who is disabled and also uses a service dog, called the

26   ER at Orange County Global Medical Center on or about January 9, 2025.  She

27   asked staff whether visitors (not patients) who use service dogs were allowed to

28   accompany family members who needed treatment in the ER.  The employee

confirmed that it was Defendants' official policy to allow disabled visitors who use service dogs into the waiting room in the ER, but not to accompany those visitors into the treatment area of the ER to attend to their loved ones. The policy excludes disabled persons who use service dog to ameliorate their disabilities from accompanying family members/loved ones into the ER itself with their service dogs. Upon learning that this was official policy and not just a one-time problem, Plaintiff decided to file this lawsuit so it would not happen to her or other similarly situated disabled persons.

32.    Plaintiff may have the need to use the services of Orange County Global Medical Center when she or her daughter have the need for medical care in the area. However, Plaintiff cannot return until *after* Defendants have implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to the Hospital until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq*.)**

33.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 32, above, and incorporates them herein by reference as if separately repled hereafter.

34.    In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those

10

opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

35.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

36.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

37.     Orange County Global Medical Center is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(F).

38.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

39.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.** For example, in a hospital it usually would be inappropriate to exclude a service animal from areas such as patient rooms, clinics, cafeterias, or examination rooms. However, it may be appropriate to exclude a service animal from operating rooms or burn units where the animal's presence may compromise a sterile environment.

*Ibid.*, emphasis in original.

40.    Defendants have a policy and practice of denying services to visitors with service animals at the Hospital. This is contrary to the ADA. The Department of Justice issued guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis added).

41.    On information and belief, as of the date of Plaintiff's most recent visits to the Hospital on or about December 27, 2024, Defendants continue to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of Plaintiff's disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

42.    In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

43.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility are one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes any "inn, hotel, motel or other place of lodging..."  42 USC § 12181(7)(A).

44.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of

auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

45.     The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

46.     On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

14

47.    Defendants' actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from visiting the Hospital and discriminated and continue to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

48.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183.  On information and belief, Defendants have continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

49.    Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of § 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize the Hospital, in light of Defendants' policies barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

//

## SECOND CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

50.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 49 of this Complaint and incorporates them herein as if separately re-pleaded.

51.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

52.    California Civil Code section 52 provides that the discrimination by Defendants against Plaintiff on the basis of disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

53.    Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

54.    Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

16

55.    The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory and compensatory to Plaintiff, according to proof.

56.    **FEES AND COSTS:**  As a result of Defendants' acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

57.    Plaintiff suffered damages as above-described as a result of Defendants' violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC**
**FACILITIES  IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

58.    Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 57 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

59.    Under the California Disabled Persons Act (CDPA), people with

17

disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

60.    Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with to "accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices…or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

61.    Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

62.    Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

63.    Defendants are also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

64.    Orange County Global Medical Center is a public accommodation within the meaning of the CDPA.  On information and belief, Defendants are the owners, operators, lessors or lessees of the public accommodation.

65.    Defendants made the decision to knowingly and willfully exclude Plaintiff and her service dog from their public accommodation and thereby deny Plaintiff's her right of entrance into their place of business with her service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being essentially barred from entering this public accommodation and place of business based upon Defendants' exclusion of Plaintiff's legally protected use of her service dog.  Plaintiff has continued to suffer denial of access to these facilities, and she faces the prospect of unpleasant and discriminatory treatment should she attempt to return to these facilities.  Plaintiff is unable to return to the Hospital until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on a daily basis since December 27, 2024, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

66.    **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendants as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled and who require the assistance of service animals from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that Plaintiff is a person with disabilities who requires the assistance of a service animal.

67.    Plaintiff may have the need to return to patronize Orange County Global Medical Center but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her

further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to patronize the Hospital and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

68.    The acts of Defendants have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendants' inaccessible policies.   As to the Defendants that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons and those associated with them, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

69.    Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiff in the ways complained of and to require Defendants to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

70.    **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendants in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty,

1    discomfort and embarrassment, and physical, mental and emotional personal

2    injuries, all to her damages per Civil Code section 54.3, including general and

3    statutory damages, as hereinafter stated.  Defendants' actions and omissions to act

4    constitute discrimination against Plaintiff on the basis that she was and is disabled

5    and unable, because of the policy barriers created and/or maintained by the

6    Defendants in violation of the subject laws, to use the public facilities on a full and

7    equal basis as other persons.  The violations have deterred Plaintiff from returning

8    to attempt to patronize Orange County Global Medical Center and will continue to

9    cause her damages each day these barriers to access and policy barriers continue to

10   be present.

11         71.    Although it is not necessary for Plaintiff to prove wrongful intent in

12   order to show a violation of California Civil Code sections 54 and 54.1 or of Title

13   III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)),

14   Defendants' behavior was intentional. Defendants were aware and/or were made

15   aware of their duties to refrain from establishing discriminatory policies against

16   disabled persons, prior to the filing of this complaint.  Defendants' establishment of

17   their discriminatory policy to deny and restrict entry to persons with service dogs,

18   and its implementation of such a discriminatory policy against Plaintiff, indicate

19   actual and implied malice toward Plaintiff and conscious disregard for Plaintiff's

20   rights and safety.

21         72.    **FEES AND COSTS:**  As a result of Defendants' acts, omissions, and

22   conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and

23   costs as provided by statute, in order to enforce Plaintiff's rights and to enforce

24   provisions of the law protecting access for disabled persons and prohibiting

25   discrimination against disabled persons.  Plaintiff therefore seeks recovery of all

26   reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions

27   of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to

28   require that Defendants make their facilities accessible to all disabled members of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1  the public, justifying "public interest" attorney fees, litigation expenses and costs

2  pursuant to the provisions of California Code of Civil Procedure section 1021.5 and

3  other applicable law.

4      73.    Plaintiff suffered damages as above described as a result of

5  Defendants' violations.  Damages are ongoing based on their deterrence from

6  returning to the Hospital.

7      WHEREFORE, Plaintiff prays for relief as hereinafter stated.

8                                      **PRAYER**

9      Plaintiff has no adequate remedy at law to redress the wrongs suffered as set

10 forth in this Complaint.  Plaintiff has suffered and will continue to suffer

11 irreparable injury as a result of the unlawful acts, omissions, policies, and practices

12 of the Defendants as alleged herein, unless Plaintiff is granted the relief she

13 requests.  Plaintiff and Defendants have an actual controversy and opposing legal

14 positions as to Defendants' violations of the laws of the United States and the State

15 of California. The need for relief is critical because the rights at issue are

16 paramount under the laws of the United States and the State of California.

17     WHEREFORE, Plaintiff Pamela Ball prays for judgment and the following

18 specific relief against Defendants:

19     1.    An order enjoining Defendants, its agents, officials, employees, and all

20 persons acting in concert with them:

21         a. From continuing the unlawful acts, conditions, and practices described

22             in this Complaint;

23         b. To modify its policies and practices to accommodate service dog users

24             in conformity with federal and state law, and to advise Plaintiff that

25             her service dog will not be excluded should she need to enter and

26             patronize Orange County Global Medical Center;

27         c. That the Court issue preliminary and permanent injunction directing

28             Defendants as current owners, operators, lessors, and/or lessees and/or

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1    its agents of the subject property and premises to modify the above

2    described property, premises, policies and related policies and

3    practices to provide full and equal access to all persons, including

4    persons with disabilities; and issue a preliminary and permanent

5    injunction pursuant to ADA section 12188(a) and state law directing

6    Defendants to provide facilities usable by Plaintiff and similarly

7    situated persons with disabilities and which provide full and equal

8    access, as required by law, and to maintain such accessible facilities

9    once they are provided and to train Defendants' employees and agents

10   in how to recognize disabled persons and accommodate their rights

11   and needs;

12   d. An order retaining jurisdiction of this case until Defendants have fully

13   complied with the orders of this Court, and there is a reasonable

14   assurance that Defendants will continue to comply in the future absent

15   continuing jurisdiction;

16   2.    An award to Plaintiff of statutory, actual, general, and punitive

17   damages in amounts within the jurisdiction of the Court, all according to proof;

18   3.    An award of civil penalty as against Defendants under California Penal

19   Code § 365.5(c);

20   4.    An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a,

21   California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5,

22   and as otherwise permitted by law, of the costs of this suit and reasonable attorneys'

23   fees and litigation expenses;

24   5.    An award of prejudgment interest pursuant to Civil Code § 3291;

25   6.    Interest on monetary awards as permitted by law; and

26   7.    Grant such other and further relief as this Court may deem just and

27   proper.

28   //

Date: February 14, 2025                    CLEFTON DISABILITY LAW

                                                    */s/ Aaron M. Clefton*
                                           By AARON M. CLEFTON, Esq.
                                           Attorneys for Plaintiff
                                           PAMELA BALL

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: February 14, 2025                    CLEFTON DISABILITY LAW

                                                    */s/ Aaron M. Clefton*
                                           By AARON M. CLEFTON, Esq.
                                           Attorneys for Plaintiff
                                           PAMELA BALL